**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FREDDY CAZARES, | :: | BIVENS ACTION |
| INMATE NO. 54570-060, | :: | 28 U.S.C. § 1331 |
|     Plaintiff, | :: | |
| | :: | |
|     v. | :: | |
| | :: | |
| MICHAEL ZENK, WARDEN USP | :: | CIVIL ACTION NO. |
| ATLANTA; and JOHN DOES 1 - 6, | :: | 1:09-CV-0284-WSD |
|     Defendants. | :: | |

## ORDER

Plaintiff, Freddy Cazares, presently confined in the Metropolitan

Correctional Center in Chicago, Illinois, has filed a first amended pro se civil rights

complaint.  (Doc. 9).  Now before this Court are Defendant Michael Zenk's motion

to dismiss with accompanying exhibits and affidavits (Doc. 28); Plaintiff's

opposition to the motion to dismiss (Doc. 29); and Defendant Zenk's reply (Doc.

32); and Plaintiff's motion for leave to file a second amended complaint to identify

the John Doe defendants (Doc. 27).[1]

_____

[1]  The Second Amended Complaint seeks to identify the Doe defendants mentioned in Plaintiff's original complaint. Because Defendants moved to dismiss the Complaint based on Plaintiff's failure to exhaust administrative remedies, the Court considers first the Motion to Dismiss.

# I. <u>Background</u>

Plaintiff's first amended complaint concerns his stay at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta"). (Doc. 9 ¶ 1). Plaintiff alleged that, between February 26 and 28, 2007, an unidentified inmate warned Defendant Does 1 and 2 that, if allowed out of his cell at the same time as Plaintiff, the unidentified inmate would kill Plaintiff. (<u>Id.</u> ¶ 17). Despite these threats, Defendant Does 1 and 2 failed to advise Plaintiff of the threats to his life, and did not ensure that Plaintiff was protected from the unidentified inmate. (<u>Id.</u> ¶¶ 18-19). Plaintiff alleged that, on February 28, 2007, Defendant Does 1 and 2 allowed Plaintiff and the unidentified inmate out of their cells. (<u>Id.</u> ¶ 20). "[W]hile in clear view of" Defendant Does 1 and 2, the unidentified inmate hit Plaintiff in the head with an "unsecured" fire extinguisher. (<u>Id.</u> ¶ 21). When the unidentified inmate lifted the fire extinguisher to strike Plaintiff a second time and yelled at Defendant Does 1 and 2 that he was going to kill Plaintiff, other inmates stopped the attack. (<u>Id.</u> ¶¶ 22-23). As a result of the attack, Plaintiff sustained a fractured skull and massive contusion and laceration of his scalp, was hospitalized and in a coma, and "required immediate brain surgery to save [his] life." (<u>Id.</u> ¶¶ 21, 24). Defendant Does 1 and 2 later informed Plaintiff that the unidentified inmate had previously

2

threatened his life, and they apologized for not taking steps or measures to prevent the attack.  (Id. ¶ 28).

On Plaintiff's release from the hospital, Plaintiff claims he was assigned to the top bed of a bunk bed, despite the fact that he was unable to walk.  (Doc. 9 ¶¶ 25-26).  When Plaintiff advised Defendant Does 3 and 4 that he could not walk, they responded that "they did not care, he could sleep on the floor, and crawl to the shower and to obtain food."  (Id. ¶ 27).  Plaintiff repeatedly requested medical care from Defendant Does 5 and 6, "complaining of severe pain, immobility requiring Plaintiff to sleep on the floor and literally crawl from his cell to obtain meals, and related ailments and suffering."  (Id. ¶ 29).  Plaintiff claims Defendant Does 5 and 6 refused to provide Plaintiff with follow-up care and told him to "stop complaining."  (Id.).

Plaintiff alleges that Defendant Does 1 and 2 were deliberately indifferent to a substantial risk of serious harm to him, in violation of the Eighth Amendment. (Doc. 9 ¶ 33).  Plaintiff further claims that Defendants Zenk and Does 3 through 6 were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, because each of them refused Plaintiff's requests for follow-up care.

(Id. ¶ 35).  Plaintiff states that he filed a grievance concerning these allegations, but received no response.  (Id. ¶ 31).  Plaintiff seeks monetary relief.  (Id. ¶¶ 36-38).

In an Order entered on June 18, 2009, this Court screened Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915A and allowed it to proceed as any other civil action.  (Doc. 10).  On December 18, 2009, Defendant Zenk filed a pre-answer motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), arguing that Plaintiff has failed to exhaust his available administrative remedies.  (Doc. 28).  In support, Defendant Zenk has submitted the Declaration of Glenda Dykes, the Administrative Remedy Clerk for the Federal Bureau of Prisons' ("BOP") Southeast Regional Office, whose records indicate that Plaintiff "has not filed any administrative remedies concerning either his alleged attack or the subsequent ignoring of his need for medical care."  (Id., Exs. 1 and 2 ¶ 7).  These records further reveal that Plaintiff has repeatedly availed himself of the administrative remedy procedure by filing three administrative remedy requests unrelated to the allegations of his complaint.  (Id., Ex. 2 ¶ 3).

Plaintiff responds that, on or about March 6, 2007, he prepared a "BP-8 Request for Administrative Remedy" and handed it to an unidentified staff member.  (Doc. 29, "Affirmation" ¶¶ 4-5).  A few days later, the same unidentified

4

staff member told Plaintiff that he could not use the administrative review process to obtain a monetary award and that the incident was being investigated. (Id. ¶ 9). Prior to his transfer from USP Atlanta on May 2, 2007, Plaintiff made several inquiries regarding the status of his BP-8, but never received a written response. (Id. ¶¶ 10-11). Rather, prison staff "repeatedly" told Plaintiff that a written response would be provided to him when the investigation was complete. (Id. ¶ 12). Plaintiff also asked for a "BP-9, to pursue second-level review, but was told that it would not be issued until [he] received a reply to [his] BP-8." (Id. ¶ 13).

Defendant Zenk replies that the first step in the administrative review process is to file a BP-9, which will be entered into the BOP's computer system upon receipt. (Doc. 32, Ex. 4 ¶¶ 7, 11). Inmates are not prohibited from filing an administrative remedy simply because they seek monetary relief. (Id. ¶ 11). When admitted to the prison, inmates are instructed in these procedures and given a copy of the handbook containing written information on the administrative review process. (Id. ¶ 10). Thus, Defendant Zenk contends, the record belies Plaintiff's allegations that he was "mislead or hampered" in his attempts to exhaust his administrative remedies. Defendant Zenk claims Plaintiff was aware of the proper procedures, but failed to follow them. (Doc. 32 at 6-7). Even if Plaintiff's

AO 72A
(Rev.8/82)

allegations that he was provided false information were true, he has not explained

why he failed to seek an administrative remedy upon arrival at his current

institution.  (Id. at 7).

## II.  Discussion

Under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C.

§ 1997e(a), "[n]o action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  See Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir.

1998) (applying the PLRA's exhaustion requirement to Bivens claims and

requiring inmates seeking monetary relief to exhaust their administrative remedies

even if they cannot obtain such relief through the administrative review process).

The PLRA's exhaustion requirement is mandatory, "regardless of the relief offered

through administrative procedures," Booth v. Churner, 532 U.S. 731, 741 (2001),

and courts do not have discretion to waive it, Bryant v. Rich, 530 F.3d 1368, 1372-

73 (11th Cir.), cert. denied, 129 S.Ct. 733 (2008).  "[T]he modifier 'available' in

the PLRA means that inmates must exhaust administrative remedies so long as

there is the possibility of at least some kind of relief."  Johnson v. Meadows, 418

F.3d 1152, 1156 (11th Cir. 2005). Although this requirement is not jurisdictional,

it is a "matter in abatement" and, thus, "should be raised in a motion to dismiss."

Bryant, 530 F.3d at 1374-75.

The Eleventh Circuit has applied the following two-step process in deciding

a motion to dismiss for lack of exhaustion:

> First, the court looks to the factual allegations in the defendant's
> motion to dismiss and those in the plaintiff's response, and if they
> conflict, takes the plaintiff's version of the facts as true. If, in that
> light, the defendant is entitled to have the complaint dismissed for
> failure to exhaust administrative remedies, it must be dismissed. This
> process is analogous to judgment on the pleadings under Federal Rule
> of Civil Procedure 12(c).
>
> If the complaint is not subject to dismissal at the first step, where the
> plaintiff's allegations are assumed to be true, the court then proceeds
> to make specific findings in order to resolve the disputed factual
> issues related to exhaustion. The defendants bear the burden of
> proving that the plaintiff has failed to exhaust his available
> administrative remedies. Once the court makes findings on the
> disputed issues of fact, it then decides whether under those findings
> the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citations omitted).

"A district court may properly consider facts outside of the pleadings to resolve a

factual dispute regarding exhaustion where the factual dispute does not decide the

merits and the parties have a sufficient opportunity to develop the record."

AO 72A
(Rev.8/82)

Singleton v. Dep't of Corr., 3223 F. App'x 783, 785 (11th Cir. 2009) (citing

Bryant, 530 F.3d at 1376), cert. denied, 2010 WL 155197 (U.S. Jan. 19, 2010) (No.

09-7625).

 The administrative remedy procedure for the BOP is set forth in 28 C.F.R.

§ 542.10 et seq., and "allow[s] an inmate to seek formal review of an issue relating

to any aspect of his/her own confinement."  An inmate must first present his

complaint informally to prison staff.  28 C.F.R. § 542.13(a); (see also Doc. 32, Ex.

4, Attach.1, Program Statement 1330.16 at 4-5).  If the inmate cannot resolve his

complaint informally, he may then utilize the three-tiered review process by first

filing a formal written administrative remedy request with the Warden of the

facility in which he is confined within twenty calendar days of the date on which

the basis of the complaint occurred.  28 C.F.R. § 542.14; (see also Doc. 28, Ex. 2

¶ 5).  If the inmate is not satisfied with the Warden's response, he may appeal to

the Regional Director within twenty calendar days.  28 C.F.R. § 542.15(a).  If still

unsatisfied, the inmate may finally appeal to the General Counsel within thirty

calendar days of the date the Regional Director signed the response.  Id.  To fully

exhaust his administrative remedies, Plaintiff must use all of these steps and do so

8

"properly (so that the agency addresses the issues on the merits)."  Woodford v.
Ngo, 548 U.S. 81, 90 (2006).

Plaintiff contends that he filed a BP-8 request for administrative review,
which BOP staff refused to answer in writing, thereby preventing him from fully
exhausting his remedies.  (Doc. 29 at 2-4).  Defendant Zenk responds that inmates
are encouraged, but not required, to file a BP-8 before they may file a BP-9, which
is logged into the BOP's computer system upon receipt.  (Doc. 32, Ex. 4 ¶¶ 5-7,
11).  This is explained to inmates upon admission, and they are provided a
handbook containing written instructions for pursuing administrative relief.  (Id.
¶ 10).

Accepting Plaintiff's allegations as true, this Court finds that this action
must be dismissed for lack of exhaustion because, even assuming that he was
mislead by USP Atlanta staff concerning the procedures for administrative review,
this does not excuse his failure to pursue his administrative remedies upon arrival
at his current institution.  Specifically, Plaintiff did not attempt to file an out-of-
time BP-9 as permitted by 28 C.F.R. § 542.14(b) and, thus, failed to exhaust his
available administrative remedies.  See Bryant, 530 F.3d at 1379 (despite inmate's
claim that he did not report a second incident of prison abuse because he feared

9

further violent reprisals by prison officials, the Eleventh Circuit held that the
inmate failed to exhaust his available administrative remedies by filing an out-of-
time grievance after his transfer to another institution where the threat of violence
was removed).  Moreover, the Court finds that Plaintiff was well aware of the
proper procedures for exhausting his administrative remedies because he had
previously filed three administrative remedy requests unrelated to the allegations of
his complaint.  (See Doc. 28, Ex. 2 ¶ 3).  The Court concludes, therefore, that
Plaintiff did not attempt to exhaust his available administrative remedies as to the
allegations of his first amended complaint.  See Kozuh v. Nichols, 185 F. App'x
874, 876-78 (11th Cir. 2006) (rejecting prisoner's claim, due to lack of evidence,
that prison officials thwarted his attempts to exhaust by refusing to respond to his
grievances and noting that prisoner "was able to file numerous informal
complaints").

### III.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Zenk's motion to
dismiss (Doc. 28) is **GRANTED,** and the instant action is **DISMISSED
WITHOUT PREJUDICE**.

10

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a

second amended complaint (Doc. 27) is **DENIED** as moot.

**IT IS SO ORDERED** this 23rd day of February, 2010.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

11